**CATERPILLAR TRACTOR COMPANY, Appellant,**

v.

**Anthony Paul CROPPER, Appellee.**

**No. 9481.**

Court of Appeals of Texas, Texarkana.

Feb. 8, 1989.

Rehearing Denied March 28, 1989.

Eugene W. Brees II, Thompson & Knight, Dallas, for appellant.

George LeGrand, San Antonio, Russell H. McMains, Edwards, McMains, Constant & Terry, Corpus Cristi, for appellee.

CORNELIUS, Chief Justice.

This case is before us on remand from the Texas Supreme Court. On the initial appeal to this Court, we held that the jury's failure to find that Anthony Cropper was negligent in any degree was against the great weight and preponderance of the evidence. *Caterpillar Tractor Company v. Cropper*, 720 S.W.2d 824 (Tex.App.–Texarkana 1986), *rev'd*, 754 S.W.2d 646 (Tex. 1988). In its review of our decision on appeal, the Supreme Court recognized our exclusive fact jurisdiction under the Texas Constitution and our right to reverse and remand the case for a new trial when we conclude that the jury's failure to find a fact is against the great weight and preponderance of the evidence, 754 S.W.2d 646, but it found that our original opinion did not adequately comply with the fact review guidelines established in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986), and remanded the case to us for "further consideration in light of this opinion." We did follow the *Pool* guidelines in our original opinion, and referred to the evidence mentioned in the Supreme Court opinion. Nevertheless, we will again detail the relevant evidence and clearly state why we again find that the jury's failure to find some negligence on Cropper's part is so

against the great weight and preponderance of the evidence as to be manifestly unjust.

Anthony Paul Cropper, an employee of the Chevron Resources Uranium Mine in Pana Maria, Texas, was injured when the Caterpillar 651B water wagon he was operating ran over a large, folded metal backhoe track. He brought suit against Caterpillar on theories of strict products liability and negligence. The jury found against Caterpillar on all liability issues and failed to find Cropper contributorily negligent. On appeal Caterpillar raises various points of error, including the contention that the jury's failure to find Cropper contributorily negligent was against the great weight and preponderance of the evidence. We agree and remand the case for a new trial.

The recitation of the facts in the Supreme Court's opinion contains errors, so we will restate the evidence as it was presented at trial. On December 29, 1981, Anthony Paul Cropper was operating a Caterpillar 651B water wagon. The 651B water wagon is a large off-road vehicle used to spray water for dust control. The cab of the vehicle, designed and manufactured by Caterpillar, contains the operator's seat, the controls and the engine compartment. The cab is connected to a large water tank by a gooseneck-type connection. The tank holds over 12,000 gallons of water and is equipped with nozzles at the rear which can spray water about thirty feet to either side. The operator's seat in the cab is positioned on the left. The engine is situated to the right front of the operator's compartment. The engine has a large muffler and air cleaner which extend from the engine compartment. The muffler is about five feet high and is oblong shaped, with the narrower side facing the operator. The air cleaner is approximately one-half as tall as the muffler, but is larger in diameter. The muffler is located about six feet and the air cleaner about nine feet from the driver's position.

Cropper was an experienced 651B operator. He had driven 651B's for fourteen months before the accident. Chevron owned and operated more than twenty

651B's, all of which Cropper had driven and operated. He was thoroughly familiar with the visibility characteristics of the 651B cab, including the restricted visibility to the right. His training in connection with the 651B included instructions that, when turning the vehicle, a left-hand turn should be used.

The accident occurred as Cropper was watering a large, open field called the equipment pad. At the time of the collision, the pad was also occupied by another Chevron employee, Gail Creek. Creek was repairing a backhoe tractor. The repairs required one of the tractor's heavy metal tracks, similar to tank or bulldozer tracks, to be removed. The track had been removed and placed south of the tractor and folded or stacked to a height of about three feet. The folded stack was about fifteen feet long and weighed approximately 13,000 pounds.

As Cropper entered the field to begin his watering, he noticed the backhoe and track and he was aware of Creek, who was standing near the backhoe. As for the track, he stated, "I knew it was there. I spotted it as I entered the area...." Cropper began to water the field in an up-and-back pattern. His first pass to the top of the field was about eighty feet east, traveling parallel to the backhoe, with the backhoe and the track to his left. At the top of the field he turned left 180 degrees and began to travel back down the field. The backhoe and track were again parallel to Cropper, but were now about twenty-five feet to his right. As he neared the backhoe, he slowed the water wagon to avoid spraying Creek. Once past the backhoe, he accelerated and began to turn right. At this point, the front wheels of the cab struck the track, driving the cab up and over it. The impact of the cab as it came down forced the operator's chair in which Cropper was sitting to bottom-out, which caused a compression fracture of Cropper's low back with resulting serious injuries.

It was Cropper's contention that the cab was defectively designed due to the visibility restrictions caused by the hood, muffler, and air cleaner. He testified that the re-

strictions were such that even though he was aware of the track and was looking for it as he turned, he was unable to see to his right sufficiently to avoid the collision.

Cropper's expert, Dr. Vaughn Adams, testified that Cropper was not negligent in operating the 651B. He stated that the cab was designed with severe visual obstructions, particularly in the right quadrant forward from the operator's position. It was Adams' opinion that these visual restrictions were present for nearly forty-six feet outward from where Cropper sat while driving the vehicle. Adams constructed a scale model and diagrams which demonstrated the restricted visibility of the 651B cab.

Caterpillar's expert, Dr. Craig Smith, also prepared a scale model of the path of travel. Smith believed Cropper could have seen the track at all times until "a minute fraction of a second before impact." Caterpillar also called Joe Geier, a professional heavy-duty equipment operator. Geier testified that he was very familiar with the characteristics of the 651B. It was his opinion that the obstructions about which Cropper complained were of little practical significance because an operator could move his head slightly and look around the muffler and air cleaner. Geier further stated that he had experienced no visibility problems whatsoever when working with the 651B. There was also testimony that the obstructions were not significant because when the 651B was in operation the muffler and air cleaner constantly moved in front of the landscape causing any object in the background to be obscured only for a brief moment. Caterpillar further introduced the testimony of August Weiss, a shop superintendent for H.B. Zachary Company. Weiss was familiar with the 651B cab and opined that while the hood of the cab could cause some visibility problems, there was no difficulty looking around the muffler. Enlarged photographs which are in evidence show that the muffler and air cleaner constituted only small obstructions to visibility to the operator's right.

*Even conceding the visibility restrictions alleged by Cropper and his witnesses,* a failure to find *any* contributory negligence is against the great weight and preponderance of the evidence. It was undisputed that Cropper was an experienced operator, fully aware of the visibility problems associated with his equipment. He saw the track, the size and nature of which presented an open and obvious danger, when he entered the field. By his own admissions he knew the track was to his right and that he was near it when he began his turn. He testified:

Q You knew it was there?

A I knew it was around there, yes.

Q You'd seen it just moments before as you drove on the north leg of that track?

A Yes, thirty seconds.

. . . .

A Right. I was coming back around and knew the track was there. I was attempting to miss it.

In spite of this knowledge, he made no attempt to look around the obstructions, failed to proceed far enough so that by looking back he could see if he was past the track, and took no other safety precaution. He did not use alternatives which were available and which could have prevented the accident, such as executing a stop-to-stop maneuver,[1] using a left turn rather than a right turn, or slowing down after he made his turn so that he could see the track[2] in front of him in time to stop or evade it. Indeed, he *accelerated* as he went into the right turn when, *according to him, he knew he could not see the track.* Ordinarily, conduct in proceeding ahead under visibility restrictions while cognizant of an imminent obstruction, and without taking advantage of alternative safety measures, does not conform to the standard of reasonable conduct. One may not proceed blindly and in disregard of dangers that might reasonably be anticipa-

---

1. A stop-to-stop maneuver allows the driver to turn the cab a full ninety degrees to both his right and left without traveling forward.

2. Visibility was relatively unobstructed to the front of the cab.

ted to exist. *DeWinne v. Allen*, 154 Tex. 316, 277 S.W.2d 95 (1955); *Woodard v. Marathon LeTourneau Co.*, 570 S.W.2d 552 (Tex.Civ.App.–Corpus Christi 1978, writ ref'd n.r.e.).

However, one's conduct in proceeding after he has full knowledge of the danger is not always negligent. Whether it is justified or is negligent may depend on such things as the actor's status, the nature of the danger, the urgency or lack of it for reaching a destination, the existence of an alternative, the availability of help from others, and the precautions taken by the actor for his own safety. *Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex.1978). We analyze Cropper's *admitted* conduct in the light of these criteria: As to status, it was undisputed that Cropper was an experienced operator of the vehicle in question. He had driven more than twenty 651B's over a period of fourteen months. He had been instructed in the 651B's proper use, including instructions in making stop-to-stop maneuvers and to make left-hand turns rather than right-hand turns. The evidence is undisputed that there was no urgency in Cropper's work at that point or in reaching a destination via that route. He knew and appreciated the danger. Several reasonable alternatives existed which if used would have avoided the collision. He could have asked Gail Creek, whom he knew was nearby, if the 651B had cleared the track. And he took no precautions for his own safety except, according to his testimony, he guessed that he was far

enough along to miss the track and he just guessed wrong. In the face of these admitted facts, a failure to find any negligence on Cropper's part is against the great weight and preponderance of the evidence. *See Guffey v. Borden, Inc.*, 595 F.2d 1111 (5th Cir.1979); *Parker v. Highland Park, Inc.*, supra; *DeWinne v. Allen*, supra; *Woodard v. Marathon LeTourneau Co.*, supra; *H.E. Butt Grocery Co. v. Israel*, 544 S.W.2d 769 (Tex.Civ.App.–Waco 1976, no writ); *Patino v. Furr's Supermarkets*, 512 S.W.2d 54 (Tex.Civ.App.–El Paso 1974, writ ref'd n.r.e.); *Rohan v. Baker*, 470 S.W.2d 238 (Tex.Civ.App.–Houston [1st Dist.] 1971, writ ref'd n.r.e.); *Carter v. Harrison*, 447 S.W.2d 704 (Tex.Civ.App.–Fort Worth 1969, writ ref'd n.r.e.); *Ingram v. Texas Industries, Inc.*, 396 S.W.2d 423 (Tex.Civ.App.–Fort Worth 1965, writ ref'd n.r.e.); *Jameson v. Melton*, 366 S.W.2d 115 (Tex.Civ.App.–Dallas 1963, no writ); *Southwestern Hydrocarbon Company v. Thompson*, 355 S.W.2d 823 (Tex.Civ.App.–Waco 1962, writ ref'd n.r.e.).

In its opinion the Supreme Court mentioned evidence which had been cited in Cropper's motion for rehearing in our Court as not having been referred to in our opinion. We did consider that evidence, however, and did mention it in our opinion. Specifically, it consists of the testimony contained in the footnote below.[3] That testimony must be considered, however, with Cropper's other testimony and admissions. For example, he testified that he was instructed to always try to make turns to the

---

3. A  I was looking for the track. It never did come into my vision at that time. I never did see it.

....
... I was trying to use all the care I had available to be able to see. I was using all my past experience. You have to develop a feel for what's out there, even though you can't see and it just so happened this time that *the feel wasn't right.*

....
Yes, after I saw I'd passed him [Creek], the water was not going to hit him and I turned my attention around and started looking for this track.

....
Q  If you'd waited a bit longer, you could have been able to see the track, like you'd seen Mr. Creek?

A  If I drove up.
Q  There's a road there you could have turned on?
A  You see, I was almost to that road already. If I'd gone further, I would have been in the fuel tanks.
Q  You knew the track wasn't on the road.
A  I knew that it wasn't on the road.

....
Q  And, of course, as you were making your turn, you were looking for the track?
A  Yes, I was.

....
A  ... I was looking for the track and due to everything, no mirror, the muffler sitting right there in front of your field of vision there and the air cleaner where it never did come into view.
(Emphasis added.)

left, but that he did not do so on this occasion because he was following a pattern "like you do when you're mowing a lawn. You don't want to overlap where you've watered and double spray it." Additionally, undisputed photographic evidence showed that Cropper would have gotten to the road before he reached the fuel tanks he testified about, and that the road would have taken him around and beyond the track. Moreover, nowhere does Cropper's testimony indicate that he used the alternatives available to him which would have afforded him adequate vision and opportunity to see the track.

Of course, the jury may disbelieve evidence which is contradicted; but to completely disregard undisputed evidence and admissions in favor of general conclusory statements denying negligence, and thereby find a complete lack of negligence, is to go against the overwhelming weight and preponderance of the evidence.

We are not judging the credibility of witnesses. We are judging undisputed evidence and admissions which, despite Cropper's generalized statements that he looked for the track, show that he deliberately chose not to use several means available to him which would have enabled him to see the track and avoid running into it. The overwhelming weight of the evidence shows this, even assuming as true his evidence concerning the vehicle's visual obstructions.

Our disposition of this issue makes it unnecessary to address the additional points of error. The judgment of the trial court is reversed and the cause is remanded for a new trial.