**Doyle COOK, et al., Appellants,**

v.

**SABIO OIL & GAS, INC., Appellee.**

**No. 10–97–155–CV.**

Court of Appeals of Texas, Waco.

June 10, 1998.

Richard E. Swift, Pam Rea, Swift & Ramsey, Palestine, Sidney H. Davis, Jr., Touchstone, Bernays, Johnston, Beall & Smith, L.L.P., Dallas, for appellant.

Deborah Race, Ireland, Carroll & Kelley, P.C., Paul M. Boyd, Paul M. Boyd, P.C., Tyler, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

DAVIS, Chief Justice.

Doyle Cook and his former wife, Darlene, filed a personal injury suit against Sabio Oil and Gas, Inc. ("Sabio") seeking damages sustained by Cook as a result of a fall from stairs located on Sabio's property. Cook was in the scope of his employment with Pool Company ("Pool") when the accident occurred. Planet Insurance Company ("Planet") insured Pool and intervened in the lawsuit. Darlene Cook filed a nonsuit.

A jury failed to find negligence on the part of Sabio or Cook. The court entered a take nothing judgment in favor of Sabio based on the verdict. Cook's motion for new trial was denied.

Cook's first point of error alleges that the trial court erred by denying his motion for new trial because the jury verdict was against the great weight and preponderance of the evidence and he was entitled to a finding of liability as a matter of law. Point of error two urges that the court erred in overruling his objection to the admission of evidence concerning his marital difficulties and alleged domestic violence because any relevancy was outweighed by the prejudicial effect. Cook's third point of error alleges that the court erred in overruling his motion for new trial based on the admission of this evidence. The fourth point of error asserts that the court erred in overruling his motion for new trial because the jury relied on Sabio's mischaracterization of testimony during final argument. The fifth point of error asserts that the court erred when it denied Cook's motion for mistrial because the cumulative effect of the errors at trial was harmful and caused the rendition of an improper judgment.

## FACTUAL BACKGROUND

Sabio contracted with Pool to remove and haul salt water from its tanks. Cook was employed as a truck driver for Pool. Pool's drivers removed salt water from Sabio's tank at the Colbert well twice a day. The driver would climb the stairs on the side of the tank and check the gauge to determine how much salt water to remove. The driver would then walk down the stairs and begin removing the salt water. From time to time, the salt water would overflow the tank and spill onto the stairs. The stairs were made of metal, and the salt water would corrode and weaken the stairs.

On August 21, 1992, Cook went up the stairs to check the gauge. According to Cook, as he was walking down the stairs a step broke and he fell to the ground. Cook was the only person at the Colbert well, so there are no other witnesses to the accident. Cook complains of back, neck, and leg pain due to the fall. Cook brought suit for damages alleging that Sabio was negligent.

## SUFFICIENCY OF THE EVIDENCE

In his first point of error, Cook alleges that the court erred in overruling his motion for new trial because the jury's failure to find negligence was against the great weight and preponderance of the evidence and he established liability as a matter of law. This point of error challenges the legal and factual sufficiency of the verdict. *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983);

*Crow v. Burnett,* 951 S.W.2d 894, 897 (Tex. App.—Waco 1997, pet. denied).

■ In order to preserve a point on legal sufficiency, the appellant must present the argument to the trial court either: (1) by motion for instructed verdict; (2) by objecting to submission of the question; (3) by motion for judgment notwithstanding the verdict; (4) by motion to disregard the contested finding; or (5) by motion for new trial. *Aero Energy, Inc. v. Circle C Drilling Co.,* 699 S.W.2d 821, 822 (Tex.1985); *Crow,* 951 S.W.2d at 899.

■ Cook filed a motion for new trial but did not challenge legal sufficiency by either stating that no evidence existed to support the jury's failure to find negligence or that he established negligence as a matter of law.[1] Thus, Cook did not properly preserve his legal sufficiency complaint for our review. *See* Tex.R.App.P. 33.1(a). Therefore, we will only address Cook's assertion that the jury verdict was against the great weight and preponderance of the evidence.

■ When we review a complaint that a jury finding is contrary to the great weight and preponderance of the evidence, we must consider and weigh all the evidence. *Dyson v. Olin Corp.,* 692 S.W.2d 456, 457 (Tex.1985); *In re King's Estate,* 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951). We will set aside the verdict only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Dyson,* 692 S.W.2d at 457.

■ Issue 1 was submitted to the jury as follows:

Did the negligence, if any, of those named below proximately cause the occurrence in question?

"NEGLIGENCE", when used with respect to the conduct of Sabio Oil & Gas, Inc., as an owner or occupier of a premises, means failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition which the owner or occupier knows about or in the exercise of ordinary care should know about.

The jury answered "no" to the question of whether Sabio or Cook was negligent.

Buddy Martin, the field supervisor for Sabio at the Colbert well, testified that salt water spilled from the tanks and corroded and weakened the steps and would "eat them plum up." Martin stated; "And when I walked up the stairway, I knew that they were weak, and I would walk one foot on one side and one on the other, because I didn't want to fall down and hurt myself." As a result, Martin had the stairs repaired.

Martin testified that prior to Cook's fall, he had inspected the stairs and reinforced steps that appeared weakened by welding metal onto them. He said that he was satisfied that after the repairs, a person could use the stairs without any danger that the steps would fall apart. Martin testified that until Cook's accident, he believed the steps were reasonably safe.

Martin also testified that he "had walked up there and seen a hole in the center of one of [the steps], but it was still, you know stabile, you know. It wasn't, you know, if it was going to give way, it would have bent, and it hadn't bent." He testified that the Pool drivers walked up and down the stairs twice a day and should have known if the steps were bad. Cook testified that he did not notice any problems when he climbed the stairs.

---

1. Cook's motion for new trial stated the following grounds:
   (1) The jury's finding of no negligence in response to Special Issue No. 1 was contrary to the overwhelming weight and preponderance of the evidence.
   (2) There was insufficient evidence to support the jury's finding of no negligence in response to Special issue No. 1.
   (3) Plaintiff would show that the evidence supporting the verdict of no negligence is so contrary to the overwhelming weight of the evidence as to be manifestly unjust.

   These allegations all challenge the factual sufficiency of the evidence and not the legal sufficiency. The complaint brought on appeal must be the same as the complaint presented to the trial court. *See Arroyo Shrimp Farm, Inc. v. Hung Shrimp Farm, Inc.,* 927 S.W.2d 146, 150–51 (Tex. App.—Corpus Christi 1996, no writ).

Martin testified that he didn't know where Cook fell but a "step broke." He testified that the broken step had been rotted out with salt water which caused it to break. He said that he didn't know if the broken step was one that had been repaired. Martin said, "We didn't change every one of them. We just changed the ones that were bad, you know."

The testimony in this case shows that the steps deteriorated because of the salt water which spilled from the tank. Martin's testimony reveals that he knew the steps were weak. He undertook repairs to strengthen the steps. He testified that after the repairs he believed the steps were safe. Sabio and Pool employees walked up and down the stairs every day. No one complained about the condition of the stairs. Martin said that he did not know that the step that broke was a bad step.

■ The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Crow*, 951 S.W.2d at 899. We do not sit as a thirteenth juror and substitute our judgment for that of the jury's. *Id.* The jury might have found that Sabio did not know that the broken step was in bad condition. The jury might have also found that Sabio exercised ordinary care by repairing the stairs. Further, the jury might have determined that since the stairs had been repaired, they did not pose an unreasonable risk of harm.

Having reviewed all the evidence, we cannot say that the jury's finding is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Dyson*, 692 S.W.2d at 457. Thus, we overrule the first point of error.

## ADMISSION OF EVIDENCE

■ In the second point of error, Cook urges that the court erred in admitting, over his objection, the testimony of his former wife, Darlene, concerning their marital difficulties and alleged domestic violence. Point of error three alleges that the court erred in overruling his motion for new trial based on this testimony. Cook argues that any relevance of this evidence was substantially out-weighed by the prejudicial effect on the jury and caused a verdict against the great weight and preponderance of the evidence. *See* TEX. R.CIV.EVID. 403.

Darlene's deposition was read into evidence. Darlene testified that Cook hit her in January of 1994. Plaintiff's counsel objected stating that the prejudicial effect of the testimony clearly outweighed any relevance. The court then gave the following limiting instruction:

Okay. Members of the jury, the witness, in her deposition, is relating an incident of alleged family violence. And you're to consider this testimony not for the truth or falsity of the statements made, but merely as evidence tending to show actions that are dissimilar to someone suffering from physical injuries. Do you understand the limited effect of the testimony? (All jurors indicated they understood.)

Darlene then testified that Cook fractured her nose.

Darlene also testified about a fight in September. The deposition testimony offered by Sabio is as follows:

[DEFENSE COUNSEL]: Did he [Cook] strike you or hit you in that fight you had in September?

[DARLENE]: Yeah. We were fighting that night. We had done tore up the apartment, you know. I mean, you know, we were—he was trying to—Well, he had pretty much told the cops he was trying to keep me off of him because he was injured, but, you know, he's a man . . .

[DEFENSE COUNSEL]: What did he do? Could you describe for us what he did?

[DARLENE]: It was just a lot of pushing and scratching and, you know, just fighting, you know. Not a lot of punching. That night he really didn't physically hurt me. I think I might have, you know, might have hurt him that night.

Cook then offered portions of Darlene's deposition. Darlene testified that in September she was doing the fighting and "he was pretty much just trying to keep me off of him" because he was injured. Sabio's offer of Darlene's deposition ended with counsel's

question: "Is it fair for me to say that [Cook] has a temper? ... A pretty good temper?"

Cook complains that the limited relevance of this evidence is substantially outweighed by the danger of unfair prejudice. Evidence is relevant if it has any tendency to make the existence of any determinative fact more or less probable than it would otherwise be without the evidence. *See* TEX.R.CIV.EVID. 401. As Sabio argues, the evidence is somewhat relevant to Cook's physical capabilities.

■ A court may exclude relevant evidence, if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* 403. "In weighing the prejudice, we must first examine the necessity for and probative effect of the evidence." *Schlueter v. Schlueter,* 929 S.W.2d 94, 98 (Tex.App.—Austin 1996, writ granted).[2] According to Sabio, the evidence was offered to show that Cook was engaging in physical activities which were inconsistent with his alleged injuries. Sabio offered other testimony of Cook's physical activities, such as riding a tractor, lifting fifty pound sacks of feed, and knocking pecans out of a tree, which were inconsistent with the injuries claimed. Thus, the necessity for the testimony concerning marital difficulties and domestic violence was marginal. Further, Darlene's testimony is far more probative of marital discord and Cook's temper than of Cook's alleged injuries. We find that the necessity and probative value of the testimony is limited.

■ We must now determine whether the danger of unfair prejudice substantially outweighed the probative value of the testimony. "Unfair prejudice" means "an undue tendency to suggest [a] decision on an improper basis, commonly, though not necessarily, an emotional one." *Fort Worth Hotel Ltd. Partnership v. Enserch Corp.,* No. 02–96–046–CV, slip op. at 26, 1998 WL 459501, at *12, —— S.W.2d ——, —— (Tex.App.—Fort Worth 1998, no pet.) (quoting *Turner v. PV Int'l Corp.,* 765 S.W.2d 455, 471 (Tex. App.—Dallas 1988), *writ denied per curiam,* 778 S.W.2d 865 (Tex.1989)); *see also* FED.

R.EVID. 403 advisory committee's note. The prejudicial effect of this testimony would be the negative effect on Cook's credibility and character. Most jurors would not think it is appropriate for a husband to hit his wife. Many jurors would not approve of the combatant nature of Cook's marriage. The testimony unfairly injects domestic violence and marital discord into a personal injury case. "Little evidence in a lawsuit will not be prejudicial to at least one party." *Porter v. Nemir,* 900 S.W.2d 376, 381 (Tex.App.—Austin 1995, no writ). However, we feel that the evidence of fighting between Darlene and Cook is unfairly prejudicial because it could lead to a decision on an improper or emotional basis. *See e.g., Wolfe v. Wolfe,* 918 S.W.2d 533, 540 (Tex.App.—El Paso 1996, writ denied). The slight probative value of this evidence is outweighed by the danger of unfair prejudice. TEX.R.CIV.EVID. 403. While we believe that the jury instruction helped focus the jury on the slight probative value of the evidence, we do not find that the instruction cured the unfair prejudice of the testimony. Thus, we find that the court erred in admitting this evidence. However, we do not find that the error probably caused the rendition of an improper judgment. TEX. R.APP.P. 44.1(a)(1).

■ Evidentiary rulings will not cause reversal unless the whole case turns on the evidence improperly admitted or excluded. *McEwen v. Wal–Mart Stores, Inc.,* 975 S.W.2d 25, 27 (Tex.App.—San Antonio Feb. 27, 1998, no pet. h.); *Wolfe,* 918 S.W.2d at 538; *Superior Derrick Servs., Inc. v. Anderson,* 831 S.W.2d 868, 876 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *Shenandoah Assocs. v. J & K Properties, Inc.,* 741 S.W.2d 470, 490 (Tex.App.—Dallas 1987, writ denied) (on rehearing). Errors in admitting evidence will not require reversal unless that evidence controlled the judgment. *See Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989). With the present record supported by evidence of inconsis-

---

2. On April 18, 1997, the Supreme Court granted Richard Schlueter's application for writ of error. The points of error the court granted writ on involve tort litigation in divorce cases and dam-

ages and not the issue of admission of evidence. *Schlueter v. Schlueter,* 40 Tex.Sup.Ct.J. 470, 481 (Apr. 18, 1997).

tent physical activity by Cook, we cannot say the erroneous evidence was dominant.

We overrule the second and third points of error.

## JURY ARGUMENT

Cook's fourth point of error alleges that the court erred in denying his motion for new trial because defense counsel mischaracterized the testimony of Buddy Martin during jury argument and the jury relied on the statement. During argument, defense counsel made the following remark:

> But the one thing he [Cook's counsel] didn't contradict at some point, the one thing he didn't contradict was the question about: "Did it surprise you when you found out that the steps had broken?"

During deliberations, the jury sent out a note requesting the part of Martin's deposition where he stated he felt the stairs were safe and was surprised when they broke. The court reporter then read a section of Martin's deposition back to the jury. Later the jury sent out a second note stating that some of the jurors felt that a portion of the deposition reflected that Martin was surprised the step broke.

In order to obtain a reversal based on improper jury argument, one must prove that the error was preserved by proper trial predicate. *See Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex.1979). In order to preserve a complaint for appellate review, the record must reflect that a timely objection stating specific grounds was made along with a ruling by the court. TEX. R.APP.P. 33.1(a).

Cook's counsel did not object during the jury argument. He did not object when the jury sent notes out concerning the testimony. Therefore, the complaint is not preserved for appellate review. We overrule the fourth point of error.

## MISTRIAL

In his fifth point of error, Cook contends that the court erred in denying his motion for mistrial because the cumulative effect of errors was harmful and caused the rendition of an improper judgment. Cook's counsel made a motion for mistrial after the jury sent out a note saying they could not reach a verdict because they were nine to three. Cook's counsel said the following:

> Just for the record, I think I need to make a motion for mistrial, that they're hopelessly deadlocked. They've so indicated they've been deliberating since 10:30. It's approximately nine minutes to four. Had about an hour for lunch, and plaintiff would move for mistrial at this point.

The court overruled this motion.

Cook apprised the court that he was asking for a mistrial based on a deadlocked jury. The motion for mistrial was not based on cumulative error. Therefore, we find that the complaint is not preserved for appellate review because the ground now asserted for mistrial was not presented to the trial court. *See id.* We overrule the fifth point of error.

We affirm the judgment.

VANCE, J., dissents.

VANCE, Justice, dissenting.

Because I disagree with the majority's disposition of two points, I dissent.

### Marital Discord

I agree that the testimony about Cook's marital discord should have been excluded under Rule 403. TEX.R.EVID. 403. However, I disagree with the majority's holding that the error did not likely cause the rendition of an improper judgment. TEX.R.APP.P. 44.1(a)(1). I think the testimony "controlled the judgment" as evidenced by the jury's refusal to find liability. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989).

The majority relies on the evidence of other activities performed by Cook as inconsistent with his alleged injuries to say that the evidence of spousal abuse was not "dominant." If the result of this lawsuit was a finding of liability but no damages, I would agree that the testimony regarding Cook's other activities (riding a tractor, lifting fifty pound sacks of feed, knocking pecans out of a tree) would be as likely or more likely to have "controlled the judgment." However,

considering that the jury never reached the question of damages, I cannot see how evidence regarding Cook's injuries or lack thereof renders harmless an error that appears to have affected the jury's determination of liability.

## Sabio's Liability

The jury's negative answer to the broad-form question regarding liability represents a refusal to find from a preponderance of the evidence that Sabio's negligence proximately caused Cook's fall. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989); *Dealers Elec. Supply v. Pierce*, 824 S.W.2d 294, 294–95 (Tex.App.—Waco 1992, writ denied). Examining the entire record, I would find that the failure to find negligence and proximate cause is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985); *Caterpillar Tractor Co. v. Cropper*, 767 S.W.2d 813, 816 (Tex.App.—Texarkana 1989, writ denied) (on remand).

As stated in the majority opinion, Sabio was aware, through its employees, that salt water constantly spilled out from the tanks, corroding and weakening the steps. It is undisputed that Buddy Martin, as field superintendent, was responsible for maintaining the steps involved in Cook's accident. He testified that, prior to Cook's fall, he knew the steps were weak and believed that they were dangerous. Despite the majority's statement that Martin reinforced the steps "prior to Cook's fall," this is far from the deposition testimony. At one point Martin seems to say that he reinforced the steps prior to the accident but at another time states that he is unable to say whether those repairs were made before or after Cook's fall. He was also unable to remember whether every step which needed reinforcement was attended. Furthermore, he had no idea whether an attempt had been made to reinforce the particular step which caused Cook's fall.

Although it was Martin's "job" to keep the stairs safe, he had no routine for repairing the stairs, and in fact testified that they had undertaken to repair only a few stairs one time, and that no other work was ever done to ensure the safety of the steps. On that one occasion, Martin determined which steps to reinforce by "stomping" and "kicking" them to see if they would hold. If a step did not "bend" under the pressure of his weight, the step was not reinforced. Martin testified that he had no idea how many steps had been repaired, but that it was done in the course of one day.

It is undisputed that the steps were "rotted out because of salt water." When Martin was asked whether he felt the steps were acceptable after he had fixed them, he stated, "Yes. After we'd fixed them then and they were, but I can't tell you when we fixed them. I don't know whether it was before or after or what. I don't know." Martin was asked, "When you walked up those stairs, if you had noticed that there was a step that was going to give way if somebody stepped on it, what would you have done?" He responded that he should have replaced those steps, but he did not. Instead, when he saw a step in that type of condition, he just stepped over it. He stated that he had seen a hole in one of the steps where Cook fell, but he still considered it "stabile."

In the face of these admissions, I think that a failure to find any negligence on Sabio's part is against the great weight and preponderance of the evidence. *Cropper*, 767 S.W.2d at 816. It is undisputed that Martin carried the responsibility of keeping the steps in a safe condition. Martin and other Sabio employee's knew of and appreciated the danger. The majority states that because Martin "believed" the steps were safe at the time of the accident (which is questionable when the deposition testimony is read as a whole) and because no one "complained" about the condition of the stairs, the jury's finding of no liability is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Sabio, through its employees, failed to remedy an unreasonably dangerous condition of which it had actual knowledge. This meets the definition of "negligence" as given to the jury. Further, because it is undisputed that the steps collapsed under Cook because they were weakened by the salt water, there can be no

question about proximate cause. I would reverse the judgment and remand the cause for a new trial. *Dyson*, 692 S.W.2d at 457.