**Opinion issued May 30, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00254-CR

———————————

**RICHARD WILLIAM KINCAID, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 82nd District Court**
**Falls County, Texas**[1]
**Trial Court Case No. 11074**

---

## MEMORANDUM OPINION

---

[1] Pursuant to its docket equalization authority, the Supreme Court of Texas transferred this appeal from the Tenth Court of Appeals to this Court. *See* TEX. GOV'T CODE § 73.001 (authorizing transfer of cases); TEX. R. APP. P. 41.3 ("In cases transferred by the Supreme Court from one court of appeals to another, the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court . . . .").

Appellant Richard Kincaid appeals from his conviction for the third-degree felony of theft of property, for which he was sentenced to seventy-five years in prison. In a single issue, Kincaid argues the trial court erred by admitting evidence that when he was arrested, the arresting officers found marijuana, fake urine, and two syringes loaded with clear liquid in the SUV he was driving.

Finding no reversible error, we affirm.

## Background

Kincaid was charged by indictment with two separate offenses: theft of property and burglary. The first indictment, filed in Cause Number 11074, alleges that on or about January 15, 2022, Kincaid "did then and there unlawfully appropriate by acquiring or otherwise exercising control of a property, namely, a 26-foot Southshore boat and trailer, of the value of over $30,000 but less than $150,000, from Ross Griggs, the owner thereof, without the effective consent, and with intent to deprive the owner of the property." *See* TEX. PENAL CODE § 31.03(e)(5). The second indictment, filed in Cause No. 11075, alleges that or about January 15, 2022, Kincaid "did then and there intentionally and knowingly enter a building, or a portion of a building, without the effective consent of Ross Griggs, the owner thereof, and attempted to steal or committed theft of property, namely: [t]ools, toolbox and fishing poles, owned by Ross Griggs." *See id.* § 30.02(a)(1). Kincaid pleaded not guilty and both charges were tried together. A

2

jury convicted Kincaid of theft but acquitted him of burglary. Kincaid pleaded true to two enhancement paragraphs[2] and the trial court sentenced Kincaid to seventy-five years in prison.[3]

## The Trial

### A.   Trial Testimony

Five witnesses testified during the guilt-innocence phase of trial.

### 1.   Luke Sell

Luke Sell, a resident of Belton, Texas, is a farmer and the general manager of a cotton gin at an agricultural supply company. Ross Griggs is one of his landlords and Sell sharecrops on Griggs's land in Falls County.

On January 15, 2022, Sell was plowing Griggs's property in Barclay. As he plowed, he saw a white SUV approach a house on Griggs's property near where he was working. The SUV had a "magnetic sticker that showed that the vehicle was from some form of business."[4] Sell saw three people exit the SUV and walk around the property. About fifteen minutes later, the SUV backed onto the

---

[2]   The first enhancement was for conviction of felony possession of a controlled substance with intent to deliver, double enhanced, and the second enhancement was for the felony of fraudulent possession of items of identifying information.

[3]   As a result of the enhancements, the range of punishment was raised from a third-degree felony to that of a "habitual enhancement" with a range of punishment of not less than twenty-five years and not more than ninety-nine years or life, and a $10,000 fine.

[4]   State's Exhibit 9 showed the sign on the SUV was for "Rick's Handyman Service."

driveway in front of a boat on the property and hooked it up to the SUV. Sell called Griggs, who told him he had not authorized anyone to take the boat. According to Sell, the boat was "way too much weight" for the SUV, which was "overloaded."

Sell stayed on the phone with Griggs, telling Griggs which direction the SUV was heading. Sell then called the constable and told him what was happening and gave him a description of the SUV. Sell eventually drove to the place where the boat and SUV had been pulled over by law enforcement. He gave a statement to the Falls County Sheriff's Department, helped detach the boat from the SUV, and went back to work.

### 2.  Ross Griggs

Ross Griggs lives in Falls County. He testified that on January 15, 2022, after a phone call from Sell, he headed toward the town of Westphalia "to try to catch up with [his] boat." As he followed the SUV that was towing the boat, he gave directions to the Falls County Sheriff's Department about the location of the boat. When the SUV stopped, Griggs saw at least two people get out "and [they] were talking around the truck and the boat." The SUV began driving again and eventually a patrol car caught up with it. When the officer pulled up behind the SUV, the SUV stopped. The occupants did not try to run away or drive off.

4

The driver and two passengers of the SUV were arrested. Griggs looked inside the SUV and saw items that were taken from his property, such as a toolbox, gas cans, and fishing rods and reels.

Griggs identified Kincaid as one of the men in the SUV. Griggs testified he did not give Kincaid permission to take his boat, to be on his property, or to take any other items. Griggs testified the boat was worth approximately $50,000 at the time of trial.

### 3. Terry Kimble

Officer Terry Kimble was a police officer for the City of Lott on January 15, 2022. He was working a funeral escort when a call came over the radio about a stolen boat being pulled by a white SUV heading toward Lott. He found the SUV, activated his siren and lights, and conducted a traffic stop of the SUV and boat. Officer Kimble identified Kincaid as the driver of the SUV. Officer Kimble ordered Kincaid and the two passengers out of the SUV. He took Kincaid to the Falls County Jail.

Officer Kimble was wearing a bodycam, but he testified it was difficult to hear most of what was on it because the wind interfered with the audio. A shortened version of the bodycam video was played for the jury. During the nearly

nine-minute video, most of which is unintelligible, Officer Kimble stated he smelled marijuana in the SUV.[5]

Officer Kimble testified that Kincaid was found with a "little bit of green, leafy substance that [he] believe[d] to be marijuana," a marijuana pipe, and fake urine that Kincaid admitted owning. Officer Kimble stated he smelled marijuana in the SUV when he approached it. He acknowledged the green leafy substance could have been hemp.

After taking Kincaid to the Falls County jail, Officer Kimble took the fake urine and marijuana to the sheriff's office.

### 4. Mieshia Banks

Deputy Mieshia Banks was a patrol officer with the Falls County Sheriff's Department on January 15, 2022. She testified that she was the primary investigator on the case. Deputy Banks arrived on the scene after Officer Kimble stopped the SUV. Deputy Banks helped Officer Kimble detain the men from the SUV and then interviewed each man. She identified Kincaid as one of the men arrested that day.[6]

Deputy Banks testified that needles with clear liquid were found inside the SUV. She said the suspects' phones were confiscated "to get a phone dump to

---

[5] Kincaid did not object to the admission of the bodycam video.

[6] All three men in the SUV were arrested but only two were charged with theft and burglary of a building. Kincaid also was charged with possession, but it is unclear what became of that charge.

establish the communication [that occurred] before the alleged crime took place," but her supervisors told her not to perform the phone dump.

### 5. Keith Godley Jr.[7]

Officer Keith Godley Jr. testified he was a part of the investigation into the theft of the boat and burglary of a building. During the investigation, he retrieved Kincaid's phone and turned it over to Deputy Banks, the primary officer on the case. He made copies of some texts from Kincaid's phone of a conversation with one of the SUV's passengers. He testified that the texts did not pertain to the boat. He stated the text messages were about a drug transaction involving GHB, the "date rape" drug.

## B. The Motion in Limine

While the jury was out of the courtroom, and prior to Officer Kimble's testimony, the State told the Court and defense counsel that Officer Kimble would testify "that when he stopped the vehicle, that he immediately smelled marijuana inside. When Mr. Kincaid was searched, he did have a marijuana or a type of narcotic pipe in his pocket. There was also fake urine found in the vehicle, which Mr. Kincaid admitted was his." Kincaid then made the following motion:

> Defense counsel: . . . I'll make [a motion in limine], because it's not relevant to this case and it's trying—and is trying to get him convicted as a criminal generally, because they're saying, Well, he smokes

---

[7] Godley was the defense's sole witness.

marijuana, he's a thief, you can smell marijuana, smoked marijuana, always using drugs, using fake urine, and he's just a criminal.

The Court: But I think the law is when it's all intertwined in the same incident, I think she can go into that.

Defense counsel: He wasn't charged with any of that.

The Court: I know. I'm not saying he's charged with it.

Defense counsel: But it has no relevance to the case. I will give you an example. Okay?

If a person is charged with DWI, alcohol DWI, and they find marijuana in the car and they're charging him—marijuana has nothing to do with the allegation of DWI—and they're charging him with DWI by alcohol, they can't bring in the marijuana that was found in the car. There's case law on that. I don't have the cites, but I know there's case law on that.

The Court: I don't—you're right. I don't think that's what she's doing.

The State: Yeah, it's the same transaction, Your Honor.

The Court: Same transaction.

The State: Cases aren't tried in a vacuum. A jury is allowed to know—

The Court: There's some case law on that.

. . .

Defense counsel: There's case law on it, Judge, that says if you're charging someone with DWI and they have got possession at the same time, and they're not

8

charged with marijuana but they found marijuana, and you're not trying the marijuana case, you can't offer the marijuana.

The State: You can, Your Honor. And at any rate, it is the mental state, you know, the state of the mind of the Defendant when they're doing what they're doing.

. . .

Defense counsel: I'm going to object. It's not relevant. Because, Judge, the issue in this case is what's charged in the indictment.

The Court: I understand.

Defense counsel: Extraneous offenses, alleged extraneous offenses, even admission of alleged extraneous offenses have no bearing on whether or not he is guilty of the offenses alleged.

The State: Your Honor, it goes to the mental state.

The Court: Mr. Karels, I think [the State is] correct about that. I—I understand your point.

. . .

Well, let me hear what they—what the witness says, and I'll make a ruling. But right now, I'm going to deny your limine and let her prove up the transaction that took place. I do think it goes to the mental state. And I know you don't want me to tell you that, but I believe that's the status of the law. And you can cross-examine about it all day long.

Subsequently, during Officer Kimble's testimony, the following exchange occurred:

9

The State: And was any contrabrand [sic]—contraband found on him?

Defense counsel: Objection, Your Honor.

The Court: Overruled.

Defense counsel: I'd ask for a running objection.

The Court: Granted.

The State: Was any contraband found on the Defendant?

Officer Kimble: A little bit of green, leafy substance that I believe to be marijuana, due to my training as a police officer

The State: Was there a pipe in his pocket?

Officer Kimble: Yes, there was a pipe, a marijuana pipe.

The State: Did you also smell the odor of marijuana in the vehicle when you approached it?

Officer Kimble: I did.

The State: And did you, when you searched the—when you searched the vehicle, did you find any other type of contraband inside that vehicle:

Officer Kimble: Yes.

The State: What did you find?

Officer Kimble: I found some fake urine.

The State: Okay. And did anybody admit to owning that fake urine?

Officer Kimble: Yes.

10

The State:            And who owned—who owned up to that?

Officer Kimble:    Mr. Kincaid.

Later, Deputy Banks was also questioned about the substances found in the SUV:

The State:            And were there any illegal type of substances found in the vehicle?

Defense counsel:  I'm going to object, Your Honor.

The Court:           Overruled.

Defense counsel:  May I have a running objection?

The Court:           You may.

Deputy Banks:     I was informed by Officer Kimble that he did find some—a couple of illegal substance items in the vehicle.

Deputy Banks then testified she saw "needles with clear liquid inside of them," which were found in the SUV "up in the sunvisor above the driver's seat."

## C.    Closing Argument

In his opening argument, Kincaid's counsel argued the evidence would show Kincaid did not realize he was taking property without the owner's permission. But there was no testimony in support of that defense or any other. In closing, Kincaid's counsel pointed out that the alleged theft occurred in "broad daylight" in a vehicle that had Kincaid's name and phone number on it. Defense counsel argued Kincaid could have removed the magnetic sticker with his name from his

11

SUV, but he did not. In addition, no one tried to run when the police stopped the SUV. Defense counsel reminded the jury that one of the SUV's occupants was not charged with theft, and he asked that Kincaid be given the same "benefit of the doubt" as the passenger who was not charged.[8]

During its closing argument, the State referred to Kincaid as "[s]omebody high on dope":

> . . . When you're towing a big boat that's attached to a vehicle that's not even big enough to pull it. But it has signage on it. It's a way to not look suspicious, okay? It's just that somebody is dumb enough to do that. Somebody high on dope, dumb enough to do that.
>
> . . .
>
> So you got a vehicle that smells like marijuana. You got a marijuana pipe in your pocket. It fits that you're just that stupid.

The State also referred to the phone dump:

> I would have liked to have seen the dump—the phone dumped. There was evidence, as you heard about, drug dealing going on, you know. Dump that to learn more about what's going on as far as drug dealing. But as far as this case goes, he's not on trial today for drugs. Okay? We're not here for that. We're only here for the theft of this boat and the items inside.

The jury convicted Kincaid of the theft charge and acquitted him of the burglary charge. The trial court sentenced him to seventy-five years in prison. This appeal ensued.

---

[8] Neither of the other two occupants of the SUV testified at trial.

**Discussion**

In his sole issue, Kincaid argues that evidence of the alleged marijuana, fake urine, and syringes recovered when he was arrested was "propensity" evidence and thus, inadmissible. The State argues recovery of the alleged marijuana, fake urine, and syringes was admissible as "same transaction contextual evidence."

## A. Standard of Review

We review a trial court's ruling on the admission of evidence for abuse of discretion. *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010); *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

This standard of review applies to a trial court's decision to admit evidence of extraneous offenses or bad acts. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Devoe*, 354 S.W.3d at 469. A trial court's ruling on the admission of extraneous offense evidence is generally within the zone of reasonable disagreement "if the evidence shows that 1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that

13

evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *De La Paz*, 279 S.W.3d at 344.

## B.    Admission of the Drug Evidence

Kincaid argues evidence concerning the alleged marijuana, the fake urine and the syringes "failed [to] assist the jury in weighing any contested issues" and "provided no assistance to the jury."[9, 10]   He argues there was no necessity to introduce the drug evidence to prove theft.   In response, the State argues that the drug evidence was admissible as "same transaction [contextual] evidence."   We disagree.

---

[9]    Kincaid relies on a case from the Court of Criminal Appeals for the proposition that "the introduction of extraneous offenses to the jury are inherently prejudicial." *Sattiewhite v. State*, 786 S.W.2d 271 (Tex. Crim. App. 1989). But in *Sattiewhite*, the Court held that testimony of an extraneous offense was properly admitted. The court observed that the testimony, in which a witness testified that the defendant threatened the decedent on prior occasions while holding a gun to her head, was "introduced as a transaction rather than as a criminal offense" and that the testimony did not suggest the defendant had faced civil or criminal liability for the extraneous offenses. *Id.* at 285.

[10]    Kincaid also relies on *Castaldo v. State*, 32 S.W.3d 413, 427 (Tex. App.—Waco 2000), *rev'd*, 78 S.W.3d 345 (Tex. Crim. App. 2002), in support of the proposition that the introduction of extraneous offenses is inherently prejudicial. We note *Castaldo* was reversed. In *Castaldo v. State*, 78 S.W.3d 345, 350 (Tex. Crim. App. 2002), the State sought the admission of evidence of the extraneous acts of the driver of the vehicle in which the defendant was riding. The driver was reckless, showed signs of intoxication, and marijuana was found in the car. *Id.* In holding the extraneous acts were admissible, the Court observed that the acts were actually helpful to the defense's theory of the case.

14

Under Texas Rule of Evidence 404(b), evidence of extraneous crimes, wrongs, and other bad acts is not admissible at the guilt-innocence phase of trial to prove that a defendant committed the charged offense in conformity with a bad character trait. TEX. R. EVID. 404(b); *Devoe*, 354 S.W.3d at 469. This "Propensity Rule" is mandatory, and "only those purposes other than propensity, such as those listed in subsection (b) of Rule 404, will justify the admission of otherwise inadmissible character evidence. Such evidence must be directed at a consequential fact, and its probative value must not be outweighed by its prejudicial potential." *Mayes v. State*, 816 S.W.2d 79, 86 (Tex. Crim. App. 1991).

Evidence of extraneous crimes, wrongs, and other bad acts, however, may be introduced if it constitutes "same transaction contextual evidence."[11] *Id.* at 86 n.4. Crimes are collectively referred to as same transaction contextual evidence when "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony . . . of any one of them cannot be given without showing the others." *Devoe*, 354 S.W.3d at 469 (quoting *Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000)). Same transaction contextual evidence is only admissible when the facts and

---

[11] The Court of Criminal Appeals has delineated two types of background evidence: same transaction contextual evidence and background contextual evidence. *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (citing *Mayes v. State*, 816 S.W.2d 79, 86–87 (Tex. Crim. App. 1991)). Background contextual evidence, which is offered only because it is "background" evidence and thus helpful to the jury, is not admissible under Rule 404(b). *See id.* at 33 n.5 (discussing *Mayes*).

circumstances of the charged offense "would make little or no sense without also bringing in that evidence[.]" *Id.* That is, same transaction contextual evidence is admissible only "where such evidence is *necessary* to the jury's understanding of the instant offense[.]" *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (emphasis in original). Same transaction contextual evidence is admitted "because in narrating the one [offense] it is impracticable to avoid describing the other, and not because the other has any evidential purpose." *Mayes*, 816 S.W.2d at 86 n.4 (citations omitted). In other words, it is admissible "not for the purpose of showing character conformity, but to illuminate the nature of the crime alleged." *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993).

The State cites a single case in support of its argument that the evidence was properly admitted as same transaction contextual evidence. *See Swarb v. State*, 125 S.W.3d 672 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd). In *Swarb*, this Court held that evidence of an arrest warrant for an extraneous offense was admissible because it was "so intertwined" with the charged offense of possession of methamphetamine. *Id.* at 682. We explained that "the arrest warrant evidence provided the jury with a context to show why [law enforcement personnel] were searching for appellant, why they were at the location to come across appellant's truck, and how they found the methamphetamine located in appellant's truck." *Id.* And we concluded that the prejudicial effect of the evidence did not substantially

16

outweigh its probative value, given the limited details of the arrest warrant introduced by the State. *Id*. We find the holding in *Swarb* inapposite. Unlike in *Swarb*, the alleged marijuana, fake urine, and syringes recovered after Kincaid was pulled over have no bearing on why he was arrested, nor do they provide context as to why law enforcement was searching for Kincaid or why they pulled him over in the first place.

*Rogers v. State* is instructive. The defendant in *Rogers* was charged with two counts of burglary of a habitation and with possession of methamphetamine. 853 S.W.3d at 31. He was convicted of the three offenses and all three charges were tried in a single trial. *Id*. During the trial, the trial court admitted the defendant's written confession, in which he admitted using and selling marijuana and methamphetamine. *Id*. The defendant objected to the admission of the portion of the confession in which he said:

> I also have in my possession at my residence a quantity of marijuana approximately four ounces, I had put it in my mother's bedroom. I am a marijuana user and sell small quantities of it. I am also a methamphetamine dealer and sell quarter grams to finance my methamphetamine habit.

*Id*. The defendant objected that the confession involving marijuana constituted "irrelevant extraneous offense evidence" but the State argued the evidence was *res gestae* of the offense and admissible to show motive to commit the burglaries. *Id*.

17

The court of appeals affirmed the admission of the statement, holding it was *res gestae* of the methamphetamine possession charge. *Id.* at 32.

The Court of Criminal Appeals disagreed, holding that evidence pertaining to the defendant's possession, use, and sale of marijuana was not admissible as same transaction contextual evidence, because the evidence was not "necessary" to the jury's understanding of the charged offense:

> The jury's understanding of the instant offenses would not have been impaired or clouded had the State described appellant's arrest without including the evidence concerning the marijuana. Such omission would not have caused the evidence regarding the instant offenses (burglary and possession of methamphetamine) to appear incomplete . . . . We hold that the evidence concerning the marijuana was not "necessary" to the jury's understanding of the offenses of burglary and possession of methamphetamine and was therefore not admissible as same transaction contextual evidence under Rule of Criminal Evidence 404(b).

*Id.* at 34.[12]  The Court held, "it would not have been impracticable to avoid describing the recovery of the marijuana and [the defendant's] confessed use and sale of marijuana," observing that the State could have described the defendant's arrest without referring to the marijuana. *Id.*[13]

---

[12]  Texas Rule of Criminal Evidence 404 is now found in Texas Rule of Evidence 404. *See Davis v. State*, No. 01-97-00406-CR, 1998 WL 417784, at *2 n.1 (Tex. App.—Houston [1st Dist.] July 23, 1998, pet. ref'd) (mem. op., not designated for publication).  The rules are substantially the same. *Id.*

[13]  The Court of Criminal Appeals vacated the court of appeals' judgment and remanded the case to the court of appeals to conduct a harm analysis.  853 S.W.2d at 35.

18

Consistent with this general understanding on the admissibility of same transaction contextual evidence, several appellate courts have held the admission of evidence regarding criminal acts or alleged criminal acts was error when the admission was not necessary to assist the jury in understanding the offense at issue. *See Overton v. State*, No. 10-07-00036-CR, 2008 WL 383508, at *4 (Tex. App.—Waco Feb. 13, 2008, no pet.) (mem. op., not designated for publication) (holding admission of evidence regarding loaded gun recovered from defendant's trunk was not same transaction contextual evidence in prosecution for possession of cocaine found on defendant during same traffic stop); *Peters v. State*, 93 S.W.3d 347, 353 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (holding evidence that shotgun and marijuana were found in hotel room when defendant was arrested for cocaine possession not admissible as same transaction contextual evidence when only contested issue was whether officers had consent to search room, because evidence "did not directly relate to a fact of consequence in the case and was intended to prove that [the defendant] acted in conformity with a (bad) character"); *Gonzalez v. State*, 510 S.W.3d 10, 28 (Tex. App.—Corpus Christi–Edinburg 2014, pet. ref'd) (holding evidence of drugs found in defendant's apartment was not same transaction contextual evidence with respect to charge involving marijuana found in defendant's car); *Thomas v. State*, No. 06-17-00224-CR, 2018 WL 2027173, at *1 (Tex. App.—Texarkana May 2, 2018, pet. ref'd) (mem. op., not designated for

19

publication) (holding methamphetamine and pipe found during traffic stop was not same transaction contextual evidence with respect to charge for unlawful possession of firearm by felon even though firearm was recovered during same traffic stop); *Revill v. State*, No. 12-02-00197-CR, 2004 WL 1416240, at *8 (Tex. App.—Tyler June 23, 2004, pet. ref'd) (mem. op., not designated for publication) (holding trial court erred in admitting evidence that defendant possessed marijuana when arrested for possession of methamphetamine with intent to deliver or manufacture).

As in *Rogers*, we conclude that evidence of the purported marijuana, fake urine, and syringes were not admissible as same transaction contextual evidence because the evidence was not "necessary" to the jury's understanding of the charged offense of theft of property. The State could have elicited testimony regarding Kincaid's arrest and the alleged theft of the boat without discussion of the purported marijuana, fake urine, or syringes. As far as the jury knew, Kincaid was not charged with any drug-related offense, and evidence regarding the items found on Kincaid and in the SUV were not necessary to their understanding of the alleged theft.

We thus hold the trial court abused its discretion by admitting testimony concerning the purported marijuana, fake urine, and syringes.[14]  The trial court's error, however, is not reversible error unless Kincaid was harmed by the admission of the evidence.

## C.    Harm Analysis

We review the erroneous admission of extraneous offenses or extraneous bad act evidence for non-constitutional error.  *Ruiz v. State*, 293 S.W.3d 685, 695 (Tex. App.—San Antonio 2009, pet. ref'd).   Rule 44.2(b) requires us to disregard the error unless it affected the appellant's "substantial rights."   TEX. R. APP. P. 44.2(b).   "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict."  *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).   Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight

---

[14]    Before evidence can be admitted as same transaction contextual evidence, it must satisfy the balancing test contemplated by Texas Rule of Evidence 403.  *See* TEX. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."); *see also Batten v. State*, No. 01-18-00456-CR, 2020 WL 625305, at *4 (Tex. App.—Houston [1st Dist.] Feb. 11, 2020, pet. ref'd) (mem. op., not designated for publication) ("To be admissible, same transaction contextual evidence must also satisfy Rule 403's balancing test[.]").  In light of our holding that the evidence was not admissible as same transaction contextual evidence, we need not perform a Rule 403 analysis.

effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) (quoting *Reese v. State*, 33 S.W.3d 238, 243 (Tex. Crim. App. 2000)). We ultimately consider whether the evidence, even if relevant, had the potential "to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Manning v. State*, 114 S.W.3d 922, 928 (Tex. Crim. App. 2003) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

In our analysis, we review the record as a whole, "including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State emphasized the error, closing arguments, whether the evidence was cumulative, whether the evidence was elicited from an expert, and even voir dire, if applicable. *Id.* at 355–56; *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003); *see also Cook v. Sabio Oil & Gas, Inc.*, 972 S.W.2d 106, 111 (Tex. App.—Waco 1998, pet. denied) ("Evidentiary rulings will not cause reversal unless the whole case turns on the evidence improperly admitted or excluded.") (citations omitted).

22

We conclude admission of the evidence regarding the marijuana, fake urine, and syringes was harmless error given the probative nature of the other evidence before the jury. The testimony itself provided significant reason for the jury to convict Kincaid of theft. Luke Sell testified that he was on Griggs's property on January 15, 2022, when he saw three people take Griggs's boat. He called Griggs and learned that the three men were not authorized to take his boat and he called the constable. He testified the boat was "way too much weight" for the SUV that was pulling it.

Griggs, the boat's owner, testified that after Sell called him on January 15, 2022, he drove toward Westphalia to catch up with his boat. He eventually caught up with the SUV that was pulling the boat. When the SUV was pulled over, the three SUV occupants, including Kincaid, emerged and they were arrested. Griggs saw some of his belongings in the SUV and testified he did not give Kincaid permission to take his boat or any other possession. He also testified he did not authorize Kincaid to be on his property.

Officer Kimble testified that he received a call about the SUV, located the SUV and the boat, and conducted a traffic stop of the SUV. He identified Kincaid as the driver of the SUV. Deputy Banks, the primary investigator on the case, testified that she arrived on the scene after Officer Kimble pulled over the SUV. She also identified Kincaid as one of the occupants of the SUV.

23

Although Officer Kimble testified that when he arrested Kincaid, he found fake urine in the SUV, a "little bit of green, leafy substance" which he believed to be marijuana, and a marijuana pipe on Kincaid, and Deputy Banks testified that needles with clear liquid were found inside the SUV at the time of arrest, we conclude that testimony played a minor role in Kincaid's conviction. Indeed, Officer Kimble acknowledged that the green substance could have been hemp, the possession of which is not illegal. *See Revill*, 2004 WL 1416240 at *8 (holding error in admitting evidence that defendant possessed small amount of marijuana when arrested was harmless and played "minor role" in prosecution for methamphetamine charge because, among other things, State did not prove substance was marijuana). Similarly, there was no testimony about the contents of the syringes.

We do not agree with Kincaid that the State "emphasized" the recovery of the purported marijuana in its closing argument. In fact, the State reminded the jury that Kincaid was not being tried on a drug charge. During its closing, the State argued:

> . . . When you're towing a big boat that's attached to a vehicle that's not even big enough to pull it. But it has signage on it. It's a way to not look suspicious, okay? It's just that somebody is dumb enough to do that. Somebody high on dope, dumb enough to do that.
>
> . . .

24

> So you got a vehicle that smells like marijuana. You got a marijuana pipe in your pocket. It fits that you're just that stupid.

The State continued:

> I would have liked to have seen the dump—the phone dumped. There was evidence, as you heard about, drug dealing going on, you know. Dump that to learn more about what's going on as far as drug dealing. But as far as this case goes, he's not on trial today for drugs. Okay? We're not here for that. We're only here for the theft of this boat and the items inside.

Beyond these statements, the majority of the State's closing argument was dedicated to discussing the alleged theft and testimony elicited from Griggs and Sell.

We conclude beyond a reasonable doubt that even though the trial court erred in admitting evidence of the alleged marijuana, fake urine, and syringes, the admission did not have a "substantial or injurious effect or influence" on the jury's verdict. The error was thus harmless. *See King*, 953 S.W.2d at 271 (holding erroneous admission of records regarding defendant's previous incarcerations was harmless); *Overton*, 2008 WL 383508 at *5 (holding erroneous admission of evidence of weapon found in trunk during drug-related arrest was harmless); *Gonzalez*, 510 S.W.3d at 29 (holding erroneous admission of evidence of drugs found in friend's apartment when charges involved marijuana found in defendant's car was harmless).

We overrule Kincaid's sole issue.

## Conclusion

We affirm the trial court's judgment.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Hightower, Rivas-Molloy, and Farris.

Do not publish. TEX. R. APP. P. 47.2(b).