IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00005-CV

 

Apparajan Ganesan,

                                                                      Appellant

 v.

 

Becky A. Tibbs, Cynthia A. Wood, 

Cody W. Ginsel, Jason A. Manuel, 

John/Jane Doe (multIple) (All 

Defendants in Personal [Individual] 

and Official Capacities),

                                                                      Appellees

 

 



From the 12th District Court

Walker County, Texas

Trial Court No. 23300

 



MEMORANDUM  Opinion










 

          Apparajan Ganesan appeals from an
unknown trial court order and various “issues” from his case below.

          The Clerk of this Court warned Ganesan
that because it appeared to the Court that the “order(s) from which the appeal
was (were) taken” was interlocutory, the Court may dismiss the appeal unless a
response was filed showing grounds for continuing the appeal.  See Tex. R. App. P. 42.3, 44.3.  Ganesan responded
and acknowledged that his “issues” were interlocutory.

          This Court has no jurisdiction over an
interlocutory appeal except as expressly provided by statute.  Stary v.
DeBord, 967 S.W.2d 352, 352-53 (Tex. 1998).  No statute expressly
authorizes the interlocutory appeal of the issues mentioned in Ganesan’s
response.

          Absent a specific exemption, the Clerk
of the Court must collect filing fees at the time a document is presented for
filing.  Tex. R. App. P. 12.1(b); Appendix to Tex. R. App. P., Order Regarding Fees (July 21, 1998).  See
also Tex. R. App. P. 5; 10th Tex. App. (Waco) Loc. R. 5; Tex. Gov’t Code Ann. § 51.207(b)
(Vernon 2005).  Under these circumstances, we suspend the rule and order the
Clerk to write off all unpaid filing fees in this case.  Tex. R. App. P. 2.  

          This appeal is dismissed for want of
jurisdiction.

 

                                                                   TOM
GRAY

                                                                   Chief
Justice

 

Before
Chief Justice Gray,

          Justice
Vance, and

          Justice
Reyna

Appeal
dismissed

Opinion
delivered and filed February 14, 2007

[CV06]






ive and manifestly unjust;
(4) the damage award pertaining to physical pain is excessive and manifestly
unjust and should be remitted; and (5) damages awarded for physical impairment
are excessive and manifestly unjust and should be remitted.  We reverse and
remand.

I.       Background

 

At approximately
3:00 p.m. on January 4, 2007, an eighteen-wheel truck driven by Juan Leal Jr.,
an employee of Tornado, collided with a vehicle driven by George, an
eighty-six-year-old rancher, on State Highway 77, near Rosebud, Texas.[1] 
As a result of the collision, George’s vehicle sustained severe damage to the
rear, and both vehicles left significant skid marks on the road.  Jim Mallory,
an expert in accident reconstruction, noted that George’s vehicle left a skid
mark measuring 391.5 feet and that the eighteen-wheel truck driven by Leal left
a 103-foot skid mark.  Based on these measurements, Mallory estimated that
George was driving fifty-five miles per hour and that Leal was likely driving
between eighty-three and ninety miles per hour.

Leal testified
that he first saw George’s vehicle when the vehicles were approximately 300
feet apart.  It was not until Leal was about 150 feet away from George’s
vehicle did he realize how slow George was driving.  At that point, Leal
slammed on his brakes.  However, the eighteen-wheel truck collided with
George’s vehicle, resulting in George’s vehicle being pushed into an adjacent
ditch.

Rene Richter, a
registered nurse at the Scott & White Memorial Hospital (“Scott &
White”) in Temple, Texas, recalled arriving at the scene of the accident and speaking
with George and state troopers investigating the incident.  When he first
arrived, Richter remembered seeing a Texas Department of Transportation
construction vehicle with orange lights on the side of the road near where the
accident transpired.  George told Richter that when he saw the construction
vehicle on the side of the highway, he slammed on his brakes and “decided to
come to a stop in the middle of the highway.”  Richter saw George “unbuckled
and he was actually sitting with his feet out of the
car . . . .”  George was alert and oriented and did not
complain of any pain, cuts, or bruising.  Richter also noted that George “had
no loss of consciousness and is pain free.”

Josh Cashion, a
trooper with the Texas Department of Public Safety, testified that when he
arrived at the scene shortly after the accident had occurred, he heard George
playing the harmonica.  Trooper Cashion saw a minor cut on George’s right hand,
but he described George as not “too shaken” and “a tough old guy.”  In fact,
George refused medical treatment after the accident; instead, George left the
scene of the accident with his son, Lonnie.  Trooper Cashion issued Leal a
citation for failing to control speed and concluded that George’s actions were
not the cause of the accident.[2] 
Trooper Cashion allowed Leal to drive the eighteen-wheel truck from the scene
of the accident to Tornado’s offices in Victoria, Texas.

The day after
the accident, Robert McBee, a longtime family friend, noticed that George’s
eyes were dilated and recommended that George visit the Dodd family physician,
Mike Locklear, M.D.[3] 
Dr. Locklear diagnosed George with a cervical sprain and a “left hand/wrist
injury” and prescribed Tylenol and Ibuprofen for treatment of pain and
inflammation.  George returned to Dr. Locklear’s office for a follow-up visit
several days later.  George, a man who was repeatedly described as stoic and
reluctant to complain about pain, told Dr. Locklear that he was feeling
“woozy.”  However, Dr. Locklear’s diagnosis remained the same, and he
specifically ruled out a concussion.  At this time, Dr. Locklear recommended
that George participate in physical therapy.

George’s
physical therapy began on January 26, 2007, and continued through the first
half of February 2007.  Beverly Luedke, a licensed physical therapist, treated
George.  When he first presented himself, George informed Luedke that he had
some neck pain, rib pain, and pain in his right shoulder.  Luedke asked George
to assign a value corresponding to his pain based on a scale of zero to ten,
with zero representing no pain and ten “being so bad to be in the hospital.” 
George assigned a three to his neck pain, a six to his rib pain, and “only
complained of soreness in his right shoulder.”  When he was discharged from
physical therapy on February 15, 2007, George stated that his shoulder felt
much better but that he still had pain in his ribs.   

            George saw Dr. Locklear
again about six weeks after his previous visit.  At this visit, George had
swelling in his face and ankles; he was short of breath; he had gained ten
pounds; and he had a heart murmur resulting from aortic stenosis.[4] 
Dr. Locklear diagnosed George with congestive heart failure.  Two days later,
George was admitted to Scott & White with kidney failure, heart failure, and
edema.  Ultimately, George died on March 6, 2007.  George’s death certificate
indicates that “heart failure” and “vascular heart disease” were the causes of
death with “urinary infection,” “renal failure,” and “suspected prostate
cancer” as contributing causes.  Lige Buroughs Rushing Jr., M.D., a licensed
physician, testified that George contracted pneumonia while hospitalized at
Scott & White and that the pneumonia was also likely to be a contributing
cause of George’s death.  Dr. Rushing stated that there was no relationship
between the accident and George’s eventual death on March 6, 2007.  Plaintiff’s
expert, David Wayne Simonak, D.O., disagreed with Dr. Rushing’s findings and
noted that George died as a result of “respiratory failure secondary to an overwhelming
pulmonary bacterial infection that led to multisystem organ failure and their
[the Dodds’] decision to basically pull the—pull the pulmonary life support”
and that George’s death was proximately caused by the accident. 

            Subsequently, the Dodds
filed suit against Tornado, alleging wrongful-death, survival, and loss of
consortium claims.  The case proceeded to trial, and the jury concluded that
Leal and Tornado proximately caused George’s injuries.  The jury apportioned
responsibility for the accident at 30% for Leal and 70% for Tornado.  In
addition, the jury awarded the Dodds:  (1) $5,000 in medical expenses; (2)
$125,000 for physical pain; (3) $125,000 for mental anguish; and (4) $125,000
for physical impairment.  Leola was awarded $75,000 for approximately two
months’ loss of consortium sustained prior to George’s death.  Finally, the
jury rejected the Dodds’ wrongful-death claims.  On November 10, 2009, the
trial court signed a judgment ostensibly adopting the jury’s findings.[5] 
Specifically, the trial court’s judgment awarded:  (1) the Dodds $380,000 in
personal-injury damages (i.e., the sum of the medical expenses, mental anguish
damages, physical pain damages, and physical impairment damages awarded by the
jury); and (2) Leola $75,000 in damages for loss of consortium.  Furthermore,
the trial court entered a take-nothing judgment against the Dodds on their
wrongful-death claims against Tornado.  The Dodds and Tornado both filed
notices of appeal in this matter.[6]

II.    Evidence of Leal’s Drug History

By its first issue, Tornado complains
about the admission into evidence of the results of two positive drug tests
taken by Leal—one occurring four years prior to the date of the accident and
the second occurring eight months after the accident.  Tornado argues that the
drug test results “are patently irrelevant” and “undoubtedly inflamed the jury
and resulted in the excessive damage awards.”  See Tex. R. Evid. 401, 402.  The Dodds
counter that Tornado did not preserve this issue because it did not object. 
Moreover, the Dodds assert that even if the complained-of evidence was
improperly admitted, any error would be harmless because the complained-of
evidence is cumulative of other properly admitted evidence.  In response to the
Dodds’ preservation argument, Tornado states that the trial court conducted a
hearing outside the presence of the jury on, among other things, the
complained-of evidence and subsequently admitted the evidence over Tornado’s
objection, thus obviating the need for an objection each time the evidence was
introduced.

A.    Preservation of Error
and Waiver

 

At two different
pre-trial hearings held outside the presence of the jury, Tornado objected to
the introduction of evidence regarding Leal’s drug history.  Specifically,
Tornado argued to the trial court that the admission of such evidence was
irrelevant and would inflame the jury.  The trial court ultimately overruled
Tornado’s objection.  Texas Rule of Evidence 103(a)(1) provides that “[w]hen
the court hears objections to offered evidence out of the presence of the jury
and rules that such evidence be admitted, such objections shall be deemed to
apply to such evidence when it is admitted before the jury without the
necessity of repeating those objections.”  Tex.
R. Evid. 103(a)(1); see Jurek v. Couch-Jurek, 296 S.W.3d
864, 870 (Tex. App.—El Paso 2009, no pet.) (noting that error pertaining to the
alleged improper admission of evidence is preserved by a running objection or
if objected to outside the presence of the jury).  Because Tornado objected to
the complained-of evidence outside the presence of the jury and pursued the
objection to an adverse ruling, we conclude that this issue was preserved for
appeal.  See Tex. R. Evid.
103(a)(1); see also Jurek, 296 S.W.3d at 870.

The Dodds also
argue that Tornado waived this issue by questioning Leal regarding his drug
history.  This argument is unfounded, especially because the supreme court has
held that “a party is entitled to explain or rebut evidence admitted over
objection and is not required ‘to sit idly by and take its chances on
appeal.’”  Coastal Oil & Gas Corp. v. Garza Energy Trust, 268 S.W.3d
1, 25 (Tex. 2008) (quoting Scurlock Oil Co. v. Smithwick, 724 S.W.2d 1,
4 (Tex. 1986)).  Therefore, even though Tornado rebutted the Dodds’ evidence regarding
Leal’s drug history, we cannot say that Tornado waived this issue.  See id.;
see also Smithwick, 724 S.W.2d at 4.

The Dodds further
argue that error, if any, in the admission of evidence detailing Leal’s drug
history is harmless because the complained-of evidence is cumulative of other
evidence admitted without objection.  We disagree.  Because rule 103(a)(1) did
not require Tornado to object to each time the complained-of evidence was
introduced, Tornado, by objecting to the complained-of evidence outside the
presence of the jury, ostensibly received a running objection pertaining to
each instance the evidence was introduced and, thus, did not waive this issue. 
See Tex. R. Evid.
103(a)(1).  Given our resolution of the Dodds’ counter-arguments, we must now
analyze the substance of Tornado’s complaints.

B.     Standard of Review and
Applicable Law

 

            We review a trial court’s
decision to admit or exclude evidence for an abuse of discretion.  Bay Area
Healthcare Group, Ltd. v. McShane, 239 S.W.3d 231, 234 (Tex. 2007); Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).  A trial court
abuses its discretion if it acts without regard to guiding rules or
principles.  Malone, 972 S.W.2d at 43.  The trial court’s evidentiary ruling
must be upheld if there is any legitimate basis for the ruling.  See id. 
We will not reverse a trial court for an erroneous evidentiary ruling unless
the error probably caused the rendition of an improper judgment or probably
prevented appellant from properly presenting its case to the court of appeals. 
See Tex. R. App. P.
44.1(a); see also Malone, 972 S.W.2d at 43; Cook v. Sabio Oil &
Gas, Inc., 972 S.W.2d 106, 111 (Tex. App.—Waco 1998, pet. denied) (stating
that an evidentiary ruling will result in reversal of the cause only where the
whole case turns on that evidence).  In determining whether the judgment turns
on the particular evidence excluded or admitted, we review the entire record.  Reliance
Steel & Aluminum Co. v. Sevcik, 267 S.W.3d 867, 871 (Tex. 2008); Nissan
Motor Co. v. Armstrong, 145 S.W.3d 131, 144 (Tex. 2004).

            Evidence is relevant if it
has any tendency to make the existence of any fact that is of consequence to
the determination of the action more probable or less probable than it would be
without the evidence.  Tex. R. Evid.
401.  Rule 402 provides, in part, that “[e]vidence which is not relevant is
inadmissible.”  Id. at R. 402.

C.    The Relevance of Leal’s
Drug History

 

            At the pre-trial hearings,
Tornado asserted that evidence of Leal’s positive drug tests were irrelevant
because this accident did not involve drugs.  The first positive drug test
occurred more than four years before the accident, when Leal worked for Texas
Liquid.  The other positive drug test transpired eight months after the
accident occurred, when Leal drove a dump truck for Dorsett Brothers.[7] 
However, as Tornado argued to the trial court, Leal was drug tested on the same
day as the accident, and the test came back negative.  Trooper Cashion, one of
the investigating officers of the accident, testified that no drugs or alcohol
were involved in this accident.  Because he did not suspect drugs and alcohol
were involved in this accident, Trooper Cashion allowed Leal to drive the
eighteen-wheel truck about 150 miles from the scene of the accident to
Tornado’s offices in Victoria.  Based on Trooper Cashion’s testimony and the
results of the drug test conducted on the same day of the accident, we fail to
see how evidence of Leal’s prior and subsequent drug tests were relevant in
this matter.  See Tex. R. Evid.
401, 402.  Neither the Dodds nor can we articulate a legitimate reason for
admitting evidence of Leal’s prior and subsequent drug tests, especially
considering the record clearly demonstrates that drugs and alcohol were not
involved in this accident.[8] 
See, e.g., Perkins v. Douglass Distrib. Co., No. 11-98-00082-CV, 2000 WL
34234578, at **2-3 (Tex. App.—Eastland Mar. 9, 2000, no pet.) (not designated
for publication).[9] 
As a result, we conclude that the trial court abused its discretion in
admitting evidence of the results of Leal’s prior and subsequent drug tests.  See
Tex. R. Evid. 401, 402; see
also McShane, 239 S.W.3d at 234; Malone, 972 S.W.2d at 43.  However,
our analysis does not conclude here.  We must now determine whether the erroneous
admission of the results of Leal’s prior and subsequent drug tests likely
resulted in the rendition of an improper judgment.  See Tex. R. App. P. 44.1(a); see also
Malone, 972 S.W.2d at 43; Cook, 972 S.W.2d at 111.

D.    Harmless Error Review 

            We consider several factors
in conducting a harmless error review for the erroneous admission of evidence: 
the state of the evidence, the strength and weakness of the case, and the
verdict.  Reliance Steel & Aluminum Co., 267 S.W.3d at 871.  Stated
otherwise, we consider the effect of the admission of the evidence; the role
the evidence played in the context of the trial; efforts by counsel to
emphasize the erroneous evidence; and whether the admission of the improper
evidence was calculated or inadvertent.  See id. at 871-75.  If
erroneously admitted or excluded evidence was “crucial” to a “key issue,” the
error is likely to be found harmful.  State v. Cent. Expressway Sign Assocs.,
302 S.W.3d 866, 870 (Tex. 2009).  We further consider whether there was
contrary evidence that the improperly admitted evidence was calculated to
overcome.  Id.; Nissan Motor Co., 145 S.W.3d at 144.

            Here, both Stephen Sanders,
a safety director for Tornado, and Leal admitted that Leal’s eighteen-wheel
truck rear-ended George’s vehicle and that Tornado was responsible.  With
regard to George’s injuries, Luedke testified that George had neck pain, rib
pain, and pain in his right shoulder and that the highest value George assigned
to the pain was a six, based on a scale of zero to ten.  And, George was
released from physical therapy after only a couple of weeks.  Moreover, Trooper
Cashion recalled George stating that he was fine, refusing medical treatment,
and playing his harmonica shortly after the accident.  In addition, when he
arrived at the scene of the accident, Richter saw George unbuckled and sitting
with his feet out of the car.  Richter stated that George was alert and
oriented; did not complain of any pain, cuts, or bruising; and “had no loss of
consciousness and [was] pain free.”  George later presented himself to Dr.
Locklear with additional health complaints; however, the record contains
substantial evidence documenting that George, an eighty-six-year-old male, had
numerous serious medical issues, including congestive heart failure, aortic
stenosis, renal failure, and edema, that existed prior to the accident and that
many of George’s subsequent health complaints were unrelated to the accident. 
Nevertheless, Dr. Locklear diagnosed George with a neck sprain and a sore wrist
and prescribed Tylenol and Ibuprofen.  Furthermore, counsel for the Dodds
questioned Leal repeatedly about his drug use so as to accentuate Leal’s
positive drug tests.  And, in their appellee’s brief, the Dodds further
accentuated Leal’s drug tests by devoting the first two paragraphs of their
initial statement of facts to the improperly admitted evidence.

Though the
record contains scant evidence of serious injuries sustained by George as a
direct result of the accident, the Dodds were awarded $380,000 in personal-injury
damages and Leola was awarded $75,000 for loss of consortium with George,
amounts that arguably were inflated, at least in part, by the admission of
evidence regarding Leal’s prior and subsequent drug test results.  See,
e.g., Demby v. Rivers, No. 01-08-00965-CV, 2009 Tex. App. LEXIS 9777, at
**1-8 (Tex. App.—Houston [1st Dist.] Dec. 3, 2009, no pet.) (mem. op.)
(affirming a jury award of $10,000 for past physical pain and mental anguish,
$10,000 for past physical impairment, $5,000 for future physical pain and
mental anguish, and $5,000 for future physical impairment pertaining to a motor
vehicle collision that injured plaintiff’s neck and back and aggravated a
pre-existing shoulder injury; plaintiff had muscle strains and spasms as a
result of the accident; the pain was sufficient to keep plaintiff from
performing daily activities); Ching Enters, Inc. v. Barahona, No.
01-07-00454-CV, 2008 Tex. App. LEXIS 7299, at **2-9, 34-42 (Tex. App.—Houston
[1st Dist.] Aug. 28, 2008, no pet.) (mem. op.) (affirming a jury verdict for,
among other things, $25,808 for past pain and suffering, $10,000 for future
pain and suffering, $25,808 for past physical impairment, $10,000 for future
physical impairment, $25,808 for past disfigurement, and $5,000 for future disfigurement
in a case where plaintiff broke several fingers while operating a
carrot-grating machine at her place of employment; the injuries required
multiple surgeries and caused plaintiff to feel “really awful”); Sw Bell
Tel., L.P. v. Valadez, No. 2-07-129-CV, 2008 Tex. App. LEXIS 1153, at
**20-22 (Tex. App.—Fort Worth Feb. 14, 2008, no pet.) (mem. op.) (affirming a
jury verdict of $15,000 for physical pain and mental anguish and $5,000 for
past physical impairment in a situation where plaintiff fell in a hole created
by Southwestern Bell, which injured plaintiff’s shoulder, required surgery to
reattach ligaments in the shoulder, and caused plaintiff “excruciating pain”); Delta
Drilling Co. v. Cruz, 707 S.W.2d 662, 667 (Tex. App.—Corpus Christi 1986,
writ ref’d n.r.e.) (reversing a jury award of $60,000 for loss of consortium in
a case where plaintiff’s husband was seriously injured from an elevator falling
from a drilling rig floor to the ground because the wife did not testify and
the husband’s testimony did not amount to evidence of the loss of “the
emotional or intangible elements of the martial relationship”).  Because we
conclude that the trial court abused its discretion in admitting evidence of
Leal’s prior and subsequent drug test results and that the admission of such
evidence likely resulted in the rendition of an improper judgment, we sustain
Tornado’s first issue.  Given our resolution of Tornado’s first issue, we need
not address Tornado’s remaining issues.  See Tex. R. App. P. 47.1.

III. Conclusion

Having sustained
Tornado’s first issue, we reverse and remand for a new trial.[10]

 

 

AL SCOGGINS

                                                                                                Justice

 

Before
Chief Justice Gray,

            Justice
Davis, and

            Justice
Scoggins

Reversed
and remanded

Opinion
delivered and filed July 6, 2011

[CV06]








 









[1] Witnesses, including Texas Department
of Public Safety Trooper Josh Cashion, testified that drugs and alcohol were
not involved in this accident.  In fact, on the same day of the accident,
Tornado tested Leal for drugs and alcohol.  The test came back negative.  Nevertheless,
the results of Leal’s prior and subsequent drug tests were admitted into
evidence—two tests which yielded positive results.

 





[2] Stephen
Sanders, a safety director for Tornado, admitted
at trial that Tornado was responsible for the accident; however, the extent of
the company’s liability was hotly contested.

 





[3] George’s children noticed that George’s
energy level decreased after the accident and that George became depressed. 
Apparently after the accident, George stopped:  (1) visiting his wife, Leola,
whom he previously visited at a local nursing home five times a week; and (2) playing
the harmonica.  George’s children also testified that George’s mobility
significantly decreased after the accident.  However, Leola did not testify as
to how the accident affected her relationship with George.

 





[4] It is important to note that the jury
heard evidence that George had, for years prior to the accident, suffered from
serious health problems, including long-term degenerative joint disease, hip
replacement in 2004, long-term urinary and prostate problems dating back to at
least 1994, a diagnosis of prostate cancer in 2004, a history of chronic low
oxygen levels requiring “home oxygen” since July 2006, and chronic pedal
edema.  In addition to his problems, several witnesses noted that George
typically refused to take prescribed medications, which Dr. Locklear
acknowledged may have exacerbated his health issues.

 





[5] The trial court’s judgment did not
provide for recovery of damages from Leal.

 





[6] In their notice of appeal, the Dodds do
not specifically advance cross-issues for appeal; they merely respond to the
arguments made in Tornado’s appellant’s brief.





[7] Specifically, the trial court allowed
deposition testimony from Leal regarding his failed drug test while employed by
Dorsett Brothers.  Regarding that failed drug test, Leal denied ever consuming
drugs but acknowledged that cocaine was present in his system because “this
girl put it [cocaine] on my penis and we had sex, and I guess it got into my
system like that.”

 





[8] In all fairness, the Dodds argue that
the admission of Leal’s prior and subsequent drug tests are “relevant to the
following issues raised by the pleading:  Tornado’s negligence in hiring Leal;
Tornado’s negligent failure to investigate Leal’s driving record; Tornado’s
failure to properly qualify Leal; negligent entrustment; and, to the issue of
whether such negligence was the proximate cause of the collision.”  However,
none of these theories were submitted to the jury or adequately clarified through
testimony at trial, and Stephens, a Tornado representative, admitted that Leal
hit George’s vehicle with an eighteen-wheel truck and that Tornado was
responsible.  

 





[9] In Perkins v. Douglass Distributing
Co., Perkins and two of his grandchildren were involved in a collision with
a tanker truck operated by Douglass Distributing Company.  No. 11-98-00082-CV,
2000 WL 34234578, at *1 (Tex. App.—Eastland Mar. 9, 2000, no pet.) (not
designated for publication).  Perkins attempted to introduce evidence of the
tanker truck driver’s “reputation for using cocaine,” including the results of
two drug tests taken several weeks after the accident occurred which revealed
“the presence of cocaine metabolites,” expert testimony that cocaine
metabolites can remain in one’s system for seven to fourteen days, evidence
that Douglass Distributing requested the tanker truck driver to submit to a
drug test the day after the accident occurred, and employment records
indicating that the tanker truck driver was suspended for refusing to submit to
the drug test the day after the accident occurred and was terminated because of
positive results on subsequent drug tests.  Id. at *2.  The trial court
excluded the evidence without articulating a basis for the exclusion.  Id. 
The Eastland Court of Appeals concluded that the trial court did not abuse its
discretion in excluding the evidence because it was not relevant given that
there was no evidence in the record indicating “that [the tanker truck driver]
was under the influence of cocaine at the time of the accident” and the
inclusion of such evidence “would have allowed the jury to speculate that [the
tanker truck driver] was under the influence of drugs at the time of the
accident.”  Id. at *3.  





[10] The Dodds argue that if we determine that
a remand of their survival and loss-of-consortium claims is necessary, we
should exercise our discretion to remand the wrongful-death claim—a claim the
jury rejected and the trial court entered a take-nothing judgment upon—in the
interest of justice.  The Dodds cite two cases for the proposition that a
partial remand is improper unless the issues involved are severable.  See
State Dep’t of Highways & Pub. Transp. v. Cotner, 845 S.W.2d 818, 819
(Tex. 1993) (per curiam); Polley v. Odom, 957 S.W.2d 932, 941 (Tex.
App.—Waco 1997), judgm’t vacated, 963 S.W.2d 917 (Tex. App.—Waco 1998,
no pet.).  We note that the Dodds’ survival and loss-of-consortium claims are
distinct causes of actions that are severable and that the Dodds did not argue
any cross-issues in their appellees’ brief; in particular, on appeal, the Dodds
did not complain about the trial court’s take-nothing judgment as to their
wrongful-death claims.  See Tex.
R. App. P. 38.1(i); In re Labatt Food Serv., L.P., 279 S.W.3d
640, 646 (Tex. 2009) (orig. proceeding) (stating that loss-of-consortium claims
are fundamentally different from a statutory wrongful-death claim and that
loss-of-consortium claims are “separate and independent claims distinct from
the underlying [wrongful-death] action”); Landers v. B.F. Goodrich Co.,
369 S.W.2d 33, 35 (Tex. 1963) (noting that survival actions and wrongful-death
actions are separate and distinct causes of action); see also Andrews v.
Rodeo Square Apartments, No. 01-05-00548-CV, 2006 Tex. App. LEXIS 6415, at
*9 n.3 (Tex. App.—Houston [1st Dist.] July 20, 2006, no pet.) (mem. op.)
(same).  We, therefore, reject the Dodds’ assertion that a remand of this case
includes their wrongful-death claims.